# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| LONGVIEW ALUMINUM, L.L.C., | ) | |
| | ) | |
| Debtor, | ) | |
| | ) | |
| v. | ) | No. 10 C 254 |
| | ) | |
| WILLIAM A. BRANDT, the Chapter 11 | ) | |
| Trustee for the estate of LONGVIEW | ) | |
| ALUMINUM, L.L.C., | ) | |
| | ) | |
| Plaintiff - Appellee, | ) | |
| | ) | |
| DOMINIC FORTE, | ) | |
| | ) | |
| Defendant - Appellant. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant-Appellant Dominic Forte's

(Forte) bankruptcy appeal.  For the reasons stated below, we affirm the bankruptcy

court.

## BACKGROUND

This matter is an appeal from Chapter 11 Bankruptcy Proceedings.  The

following facts are stipulated by the parties and are undisputed.  Longview

Aluminum, L.L.C. (Longview) is a limited liability company (LLC), organized under the laws of Delaware. Longview was governed by an Amended and Restated Limited Liability Company Agreement (LLC Agreement), which listed five members who made up a Board of Managers (Board): Michael Lynch (Lynch), Michael J. Ochalski (Ochalski), John L. Kolleng (Kolleng), McCall Enterprises, L.L.C. (McCall), and Forte. Under the LLC Agreement, Forte had a 12% interest in Longview. In addition, the LLC Agreement provided that Longview would be managed by the Board and that Longview was required to promptly furnish members of the Board financial data relating to the financial condition of the company. The LLC Agreement also provided members with the right to inspect, audit, check and make copies of the company's books and records.

In 2001 and up to June 2002, Forte made requests to Longview, asking Longview to furnish business records or to permit Forte to inspect Longview's records. All of Forte's requests were denied. In July 2002, Forte sued Lynch, contending that Lynch used his controlling interest in Longview to exclude Forte from management decisions and any review of Longview's business documents. Longview, Great Lakes Processing, LLC, and Michigan Avenue Partners, LLC (collectively referred to, along with Lynch, as "Longview Defendants") moved to intervene in the case and were named as additional defendants in the action brought

by Forte. In August 2002, the members of the Board other than Forte, including

Ochalski, Lynch, Kolleng and McCall, executed a majority written consent, which

formally took away Forte's right to access Longview's information and records. On

November 7, 2002, Forte and the Longview Defendants entered into a settlement

agreement (Settlement Agreement) under which $400,000, plus attorneys' fees and

costs, would be paid to Forte in exchange for Forte's agreement to leave the Board.

As part of the settlement, on November 7, 2002, Longview delivered Forte a

$200,000 cashiers check as an initial payment. On January 16, 2003, Longview

delivered another check to Forte in the amount of $15,000, which represented

payment for Forte's attorneys' fees and costs.

On March 4, 2003, Longview filed a Chapter 11 petition for bankruptcy relief

(Bankruptcy Petition). Plaintiff-Appellee William A. Brandt (Trustee) was

appointed as Trustee in the bankruptcy proceedings for Longview (Bankruptcy

Proceedings). The Trustee filed the instant adversary action (Adversary Action)

against Forte in the Bankruptcy Proceedings, seeking to avoid the $200,000 and

$15,000 settlement payments as preferential transfers. Since the $15,000 transfer

was made within three months of the Bankruptcy Petition, Forte conceded that the

$15,000 payment was a preferential transfer and returned the funds. Forte, however,

contested the Trustee's assertion that the $200,000 payment to Forte constituted a

preferential transfer made to an insider within one year of the Bankruptcy Petition. In the Bankruptcy Proceedings, the bankruptcy court allowed the parties to proceed with a trial on the papers based on stipulated facts. The bankruptcy court ruled in favor of the Trustee, finding that Forte was an insider as defined by 11 U.S.C. § 101(31) of the Bankruptcy Code, and that therefore the Trustee could avoid and recover the $200,000 transfer. Forte has appealed the bankruptcy court's ruling in the Adversary Action.

**LEGAL STANDARD**

A federal district court has jurisdiction, pursuant to 28 U.S.C. § 158, to hear appeals from the rulings of a bankruptcy court. *Id.* On appeal, the district court reviews the factual findings of the bankruptcy court under the clearly erroneous standard and reviews the bankruptcy court's legal findings under the *de novo* standard. *Wiese v. Community Bank of Cent. Wis.*, 552 F.3d 584, 588 (7th Cir. 2009)(stating that the court "review[s] the bankruptcy court's determinations of law *de novo* and findings of fact for clear error," but "where the bankruptcy code commits a decision to the discretion of the bankruptcy court, we review that decision only for an abuse of discretion"); *see also in re A-1 Paving and Contracting, Inc.,* 116 F.3d 242, 243 (7th Cir. 1997)(stating that a "bankruptcy court's findings of fact

are upheld unless clearly erroneous and the legal conclusions are reviewed *de novo*").

Where there are mixed questions of law and fact, the district court conducts a *de novo* review. *Freeland v. Enodis Corp.*, 540 F.3d 721, 729 (7th Cir. 2008).

**DISCUSSION**

Forte contends that the Bankruptcy Court erred in including a member or manager of a LLC within the definition of an "insider" under 11 U.S.C. § 101(31) and therefore failing to consider whether Forte was actually a person in control of Longview. The determination of whether a person is an insider, as defined by 11 U.S.C. § 101(31) of the Bankruptcy Code, is "properly characterized as a mixed question of law and fact." *In re Krehl*, 86 F.3d 737, 742 (7th Cir. 1996). Thus, we shall conduct a *de novo* review of the bankruptcy court's ruling. *Freeland*, 540 F.3d at 729.

Pursuant to 11 U.S.C. § 547(b)(4) (Section 547(b)(4)) , with certain exceptions, "the trustee may avoid any transfer of an interest of the debtor in property . . . made– on or within 90 days before the date of the filing of the petition; or . . . between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider. . . ." *Id.* Pursuant to 11 U.S.C. § 101(31)(B) (Section 101(31)(B)), if "the debtor is a corporation," the term

"insider" is deemed to include a: "(i) director of the debtor; (ii) officer of the debtor; (iii) person in control of the debtor; (iv) partnership in which the debtor is a general partner; (v) general partner of the debtor; or (vi) relative of a general partner, director, officer, or person in control of the debtor. . . ." *Id.*

I. Whether a Member or Manager is Properly Analogized to a "Director"

Forte argues that the bankruptcy court erred in concluding that Forte, as a member of Longview, qualified as an insider under Section 101(31)(B). Pursuant to Section 101(31)(B), a "director" of the debtor is an insider regardless of the degree of control exercised over the debtor. *See, e.g., in re Public Access Technology.Com, Inc.*, 307 B.R. 500, 505 (E.D. Va. 2004); *In re Barman*, 237 B.R. 342, 349 (Bankr. E.D. Mich. 1999). The bankruptcy court concluded that a member or manager should be treated similarly under the statute. The bankruptcy court reasoned that the term "director" in Section 101(31)(B) is merely intended to illustrate the underlying relationship between the individual and the company. The bankruptcy court also found that Forte's position, as one of the five members on the Board of Longview, was a position equivalent to a director's position.

Forte argues that Section 101(31)(B) does not explicitly list a manager or member as one of the categories of insiders, and that therefore a manager or member

is not an insider unless he falls under 101(31)(B)(iii) as a person in control of the debtor. However, the Seventh Circuit has indicated that "[l]egislative history suggests that, in addition to the individuals and entities actually named, the term also encompasses anyone with 'a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor.'" *in re Krehl*, 86 F.3d at 741-42. In addition, the Seventh Circuit has indicated that the lists in Section 101(31) are "intended to be illustrative rather than exhaustive." *Id.* (quoting in part S. Rep. No. 989, 95th Cong.2d Sess.)(addressing Section 101(31)(A)).

As stated above, Longview is a LLC rather than a corporation. There is nothing in Section 101(31) that specifically deals with the definition of an insider in the case of a LLC. By stating in its preface "[i]f the debtor is a corporation," Section 101(31)(B) on its face indicates that its terms were intended to relate to corporations, not LLCs. Notwithstanding, there is no dispute as to whether Section 101(31)(B) governs the issue in this case. (Appellant 13); (Appellee 6).

Under Delaware law, a corporation generally must "be managed by or under the direction of a board of directors. . . ." 8 Del.C. § 141. Thus, in referencing a director, Section 101(31)(B) was intended to refer to the party that "managed" the debtor corporation. With respect to a limited liability corporation, Delaware law

states that "[u]nless otherwise provided in a limited liability company agreement, the management of a limited liability company shall be vested in its members . . . ." 6 Del.C. § 18-402. Thus, pursuant to Delaware law, directors are generally provided with authority for managing the corporation and members are generally provided with authority for managing the limited liability company. The bankruptcy court therefore properly found that a member of a LLC would be an analogous position to a director of a corporation under Delaware law.

In addition, as the bankruptcy court pointed out, the LLC Agreement provided the members with substantial authority, stating that "the authority, power, and responsibility to manage the operations and affairs of the Company shall be vested in the Board of Managers and the Members." (11/24/09 MD 9). Thus, in regard to Longview, a LLC that has allocated substantial authority concerning its business decisions to its members, a member such as Forte would fall within the definition of an "insider" under Section 101(31)(B) without regard to whether he is a person in control of the debtor under Section 101(31)(B)(iii).

In arguing that the bankruptcy court erred in failing to consider whether Forte had actual control over Longview, Forte cites to a variety of non-controlling precedent in which the courts considered the amount of actual control the individual in question exercised over the debtor. *See, e.g., in re U.S. Medical, Inc.*, 531 F.3d at

1279; *In re Kids Creek Partners, L.P.*, 200 B.R. 996, 1000 (Bankr. N.D. Ill. 1996);

*In re Octagon Roofing*, 124 B.R. 522, 531 (Bankr. N.D. Ill. 1991); *In re Hobbick*,

2001 WL 34076375, at *2 (Bankr. C.D. Ill. 2001); *In re Guardian Equipment Corp.*,

20 B.R. 824, 825 (Bankr. S.D. Fla. 1982). The bankruptcy court correctly

distinguished the cases cited by Forte, contending that such cases stand for the

proposition that, to be an insider, an individual must exercise control over the debtor,

but that such a consideration is only relevant if the individual did not have a formal

legal relationship with the debtor. (11/24/09 MD 11). The bankruptcy court

properly pointed out that under 11 U.S.C. § 101(31)(B) a "director of the debtor,"

and a "person in control of the debtor," are separately listed as individuals that would

qualify as insiders. Thus, if an individual fit under the definition of a "director," it

would not be logically necessary to also inquire whether the individual would fit

under one of the other listed categories such as a "person in control of the debtor."

Based upon the above, the bankruptcy court properly concluded that by virtue of

Forte's status as a member of the LLC, Forte was an "insider" under Section

1010(31)(B). Thus, the bankruptcy court did not err in failing to examine Forte's

actual control over Longview while Forte effectively remained a managing member.

Forte has attempted to explain that the $200,000 transfer was part of a

legitimate settlement in an action that he brought to enforce his rights as a member of

the LLC.  However, in delineating *per se* insiders, Section 101(31)(B) creates a

bright line rule making certain categories of individuals inherently suspect and thus

subject to avoidance for longer than the otherwise applicable three month period

prior to the bankruptcy filing.  *See, e.g., In re Public Access* 307 B.R. at 505; *In re*

*Barman*, 237 B.R. at 349; *In re Kunz*, 489 F.3d 1072, 1079 (10th Cir. 2007)(noting

that "a general partner or a relative is an insider per se, without need for showing the

specific nature of the relationship with the debtor in a particular case").  Section

101(31)(B) does not provide that such categories of individuals are considered

insiders unless they can come up with a good explanation for why a transfer was for

legitimate purposes.  In addition, Section 547(b)(4), which provides for avoidance of

certain transfers made to insiders, does not provide that avoidance is allowed unless

the insider can give a good reason why the transfer should be considered part of fair,

arms-length dealing.  Thus, the fact that Forte has presented facts showing that the

transfer to him may have been for legitimate purposes and did not involve insider

influence or self-dealing is not relevant to the assessment of whether the $200,000

transfer was subject to avoidance.

## II.  Forte's Status as Manager

Forte argues that as early as 2001, he was no longer effectively a managing

member of Longview since he was denied access to the books and records of Longview.  Forte also points out that in August 2002, before the $200,000 transfer was made, the majority of the Board executed a formal written consent excluding him from Longview records and information.  The bankruptcy court indicated that, in spite of those facts, Forte remained a member until he agreed to relinquish his management rights in Longview on condition of full payment of the settlement account.  (11/24/09 MD 11).  As discussed above, the bankruptcy court concluded that, based on Forte's legal relationship with Longview, his actual control over Longview was not a dispositive factor in determining whether Forte was an insider.

As the bankruptcy court correctly pointed out when addressing the director issue, a court must look beyond mere titles in assessing whether an individual is an insider and examine the legal rights of the individual in question.  (11/24/09 8).  The stipulated facts show that in addition to refusing Forte's requests for books and records, the majority of the members on the Board executed a formal written document suspending Forte's authority to access Longview's information and records.  (Appellant 15).  Specifically, the stipulated facts provide that on August 20, 2002, certain members other than Forte, including Ochalski, Lynch, Kolleng and McCall, executed a majority written consent (Majority Consent) that provided the following:

NOW, THEREFORE, BE RESOLVED, that the undersigned hereby consent to maintaining such records and information in confidence from Dominic Forte until such time as: (1) the Company concludes its investigation of Dominic Forte's improper purpose, (2) the BPA concludes its audit of the Company's account; and, (3) the discovery closes in the litigation between the Company and the United Steelworkers of American (on or about October 30, 2002). The harm to the Company far outweighs any benefit to Domnic Forte of disclosure of such records to Dominic Forte.

(Stip. F. Par. 24). Thus, on August 20, 2002, Forte was effectively stripped of his authority to access information and records from Longview. In this case, there was more than merely a hindrance or prevention of Forte's exercise of authority with respect to the books and records. Certain of Forte's member rights were actually suspended in writing by the Board. That suspension of rights occurred on August of 2002, before the payment to Forte at issue in this case, which was made in November of 2002. As indicated above, pursuant to 11 U.S.C. § 547(b)(4), with certain exceptions, "the trustee may avoid any transfer of an interest of the debtor in property . . . made– on or within 90 days before the date of the filing of the petition; or . . . between ninety days and one year before the date of the filing of the petition, *if such creditor at the time of such transfer was an insider. . . .*" *Id.* (emphasis added). Thus, the relevant inquiry is what effect the Majority Consent had on Forte's status as a member.

The stipulated facts do not reflect that there was ever any formal vote or writing to strip Forte of his member status at Longview. While the Majority Consent

precluded Forte from accessing information and records from Longview, the authority by Forte to do so was only part of his bundle of rights as a member. The LLC Agreement reflects that a member had more rights than merely accessing Longview's records. For example, members are provided with certain distributional and voting rights. (LLC Agr. Par. 1.1(t)). As the bankruptcy court correctly pointed out, at the time of the transfer of the $200,000, Forte was still a member of Longview. Nothing in the Majority Consent changed that fact. Thus, at the time of the transfer, Forte held a formal position on the Board, and although some of his rights were curtailed by the Majority Consent, his position still placed him in such an intimate association with Longview that he is appropriately considered a *per se* insider for the purposes of Section 101(31)(B). Therefore, we affirm the bankruptcy court in its ruling in favor of the Trustee.

## CONCLUSION

Based on the foregoing analysis, we affirm the bankruptcy court.


_____
Samuel Der-Yeghiayan
United States District Court Judge


Dated: June 28, 2010

13